Case number 23-5178. Catherine Daniele Pacheco Quiros, et al. Gulshan Karimova, appellant, versus Molly Amador, Deputy Consul General and Visa Unit Chief, U.S. Embassy in Costa Rica, et al. Mr. Piston, for the appellant. Ms. Ryan, for the appellees. Mr. Piston, good morning. Good morning, Your Honor. Michael Piston upon behalf of the appellant, Gulshan Karimova. This court needs to answer today a very easy question. Is the mere fact that a visa application was refused three years ago sufficient reason in itself to dismiss a mandamus complaint? It's easy because this court already answered it in Mashpee, where it said that the ultimate issue, as in all such cases, will be whether the time the BIA is taking to act upon the Mashpee's petition satisfies the rule of reason. That issue cannot be decided in the abstract by reference to some number of years, but will depend upon the complexity of the task at hand, the significance and permanence of the outcome, and the resources available to the agency. But the lower court did exactly what Mashpee said not to do. It decided the issue of whether the delay in this matter was unreasonable simply on the fact that the case had been pending for three years and didn't take into consideration any of the other factors, which Mashpee referred to. In fact, she couldn't take into consideration any of these factors because there was no evidence or even allegations in the record as to what it was. So in doing so we should compare this case to that of the Fourth Circuit's decision in Gonzales versus Cusinelli. In Gonzales versus Cusinelli, the Fourth Circuit looked at a record which was much more developed than the record here, and they still found that the government had not sufficiently satisfied them that even though they were claiming to be applying a first-in, first-out method, they hadn't satisfied them that it was sufficient to establish that they were really following a rule of reason, and therefore they remanded the case back to the district court. Here we have a case where the consul didn't even claim to be following a rule of reason, any rule of reason. There is simply nothing in the record whatsoever to say how visa applications are being adjudicated in Georgia. Rather, the judge just simply said, pending three years, that's reasonable to me. Case dismissed. In this case, Ms. Karamova has had a meeting with the consul, a hearing with the consul. Yes, she did. And her application was refused. Yes. They acted on it. They said it's refused, denied, equivalent of denied. And then they said, you know, we keep it open for administrative processing, but she has a decision. So it's not as though, I understand your point, if they still hadn't even had her in for an interview and made a decision, but they've made a decision. They've just said, for whatever reason, internally or externally, we're not slamming the case shut. But she's had a decision. Every D.C., virtually every D.C. district court that has considered that argument has rejected it. Because a 221G refusal is clearly not a final refusal. How do we know it's clearly not a final refusal? How do we know that? Well, because specifically in Karamova's case, it said, this is not a final refusal and we're going to be looking at your case further. Well, the Foreign Affairs Manual is quite explicit that a refusal is a refusal, it's a denial, and it remains a denial, and there's nothing pending, even if they're doing administrative processing. Administrative processing is sort of whatever they wish to do internally. But your client applied, your client got a meeting with the consul, and then your client got a decision that says you are refused, you are denied. And whatever they want to do on their own end afterwards doesn't seem to me to implicate. Your Honor, Section 5 U.S.C. 555B requires that an administrative agency bring to a final conclusion a matter presented to it in a reasonable time. As far as Karamova's concerned, they've got a final conclusion. Well, certainly the district court in five, I don't know how many was it, 11 Iraqis seeking justice versus Kerry disagreed, and they said this is clearly not a final decision. And every court that's followed, that's decided the case after five Iraqis, I don't know if it's five or a different number, they all agreed. We're not bound by how district courts rule. We get to decide this de novo. And so I'm trying to ask you to reason not from if there's a particular reason in that district court decision you find persuasive, but your complaint was filed because she hadn't even had an interview. There's nothing in your complaint that addresses post-denial administrative processing. And so I'm trying to understand what the argument is that if they have a procedure, an internal procedure that says we're always getting updated information where we may choose to relook at this again if we get information that seems relevant to us. But as of now, you're denied. The manual says denied means denied. You don't have a pending application anymore. You have a final decision on your application. What are we supposed to do with that? A denial which clearly is not a final conclusion of the matter does not satisfy the requirements of the APA. This denial was clearly not a final conclusion. As you look at our briefs. You didn't amend your complaint after she had her interview and her denial. Your complaint has no allegations at all about this post-denial delay that you're challenging. Because it didn't really make any difference. We're not asking for a nominal denial. We're asking for a final conclusion. But if the State Department says it's not a nominal denial, it is in fact a flat denial. But it's to your client's benefit that we will keep the file open in case we obtain information that makes us change our mind. That's something entirely to your client's benefit. But there's nothing else that addresses that they have. There's no regulation that I'm aware of that you've brought to our attention. There's no factual allegations in your complaint about any legal right to a conclusion of administrative processing. Quite the contrary. 555B says that they have a right to a final conclusion. And this clearly was not a final conclusion. At this point, all they've said is we'll keep the file open in case we learn of anything that helps your client. How does that help your client to cut that process off? The NVC specifically said this is not a final decision. And we're going to be reviewing your case more. It also specifically said that it was reviewing the application. I have a prior question about your legal claim. The complaint cites as the basis of the obligation to act, the Administrative Procedures Act 555. But as I read the Supreme Court's decision in Norton versus the Utah Wilderness Alliance, you have to have a specific ground for the obligation to act. And I don't take that to be finding the APA provision sufficient. And you haven't identified any other, any more specific legal duty on the part of the consul to act. Well, take a look at the court's decision in Mashpee, Your Honor. I agree. I think the court's decision in Mashpee cites only to 555. And I find that puzzling for the same reason. You find it puzzling? I find it puzzling. It predates. But is it not binding upon this court? Well, it predates the Supreme Court's decision in Norton, which builds I think further a requirement of specific, pointing to a specific obligation. And my assumption is that in Mashpee, everybody understood, the Bureau of Indian Affairs has a process and an obligation for ruling on tribal requests for recognition. But you're right. Oddly, the case is briefed and decided only under 555. And once Norton has now built on that and explained that there's a need for identifying a discreet agency action that the agency is required to take. And the Administrative Procedure Act states very clearly that an agency is required to bring a matter brought before it to a final conclusion in a reasonable time. That is a discreet action. That's what this court ruled in Mashpee. And I submit that that ruling is binding upon this panel. I do not believe the Supreme Court decision reversed Mashpee. But, you know, if I went to the consulate in Georgia and I said, you know, I submitted something and I said, here's my matter. You know, you should change your processing for, you know, an employment visa to X, Y, and Z. Like that would, under your reasoning, be a matter brought before it under 555. But what I take Norton to be focusing on is that you have to bring a matter on which the agency has a requirement to act. And 555 itself does not create that requirement. Otherwise it would cover my, you know, presentation to the consulate in Georgia of a proposal that people with their last names that begin with K should be processed first. They don't have any requirement to act on that, notwithstanding 555. Well, with respect, Your Honor, I think you're raising a different issue. And that is the definition of what a matter is. And you may well be correct that the hypothetical that you provided would not fall within the APA's definition of a matter. But I don't think there's any dispute that a visa application is a matter. And it certainly is not unreasonable to ask that it be decided in a, brought to a final conclusion in a reasonable time, just as this court ruled in Mashpee that the question, the probably far more complex question of whether or not a tribal tribe should be recognized, should be brought to a final conclusion in a reasonable time as well. And I suggest that this court should follow Mashpee. But if this court has determined that Mashpee is in error, I think that probably the best thing to do would be to recommend this case for hearing and buying. No, I don't think, I'm not saying that it's an error. I'm just saying that the Norton versus Southern Utah Wilderness Alliance further elaborates what's required. And that's a Supreme Court case that comes after. I'm sorry, I didn't hear you. I'm sorry. The Supreme Court decision in Norton versus Southern Utah Wilderness Alliance comes after Mashpee and further elaborates what is required, which is that the claimant identify a non-discretionary duty, a specific duty on which the agency is required to act, a discrete agency action that the agency is required to. And I just don't see how bringing a matter to a final conclusion is not a discrete agency action. Well, so would it be in my hypothetical, but I don't want to beat a dead horse. It would be a discreet agency action to say that everybody who's, whose last name begins with K gets put at the front of the line, but, but I don't have an underlying legal claim to that. And that's what I think the Norton versus Southern Utah Wilderness Alliance is focusing on. I think we're both beating dead horses here because I continue to maintain that the APA does provide a discreet action. This is what this court ruled in Mashpee. And I do not see the Supreme Court's decision. So we're really good. Let me just ask you a quick fact question. When did she learn that her application had been refused? When did I learn her application? Did she learn or you learn that her application had been refused after her consular interview? Honestly speaking, I'm not, I'm not, I really can't recall this was a, this case, this complaint was filed with quite a few cases were all filed together. The government was settling them all. And then at the very last moment, they said, well, we're not going to settle care. Well, at the time you filed the complaint, were you aware that her application, she'd had an interview and been refused? To be perfectly frank with you, your honor, I would just have to say that what I knew is what I wrote in the complaint. And I really cannot speak now or elaborate upon it. Okay. So then that, that gave, that did not address or disclose or identify that any action had been taken on her application. And you actually started with the 2019 date there. So I'm to assume that you weren't aware of that point, that she had had an interview and been refused. Did you start the time? I'm really not sure whether or not she had an interview. What I do know is that she didn't receive a visa and she did not receive what five Iraqis considered to be a final refusal. I have one other fact question, which is in the appendix at page 88, there's an email exchange between Ms. Karamova and the embassy in which she says, my attorney submit that he had an interview and that since then she's not received a visa. And I'm wondering if there's anything in the record or any knowledge as to when that happened, when the supplemental information was given. I'm sorry. I really can't elaborate beyond that. And incidentally, that attorney wasn't me. See, she had her own attorney for consular processing. I was only brought in for the mandamus. So when you compare this case to Gonzalez versus Cuccinelli, the major difference between this case and Gonzalez is how much better a case the government had in Gonzalez. They said, well, at least in Gonzalez, you have provided some evidence that you were following a first in, first out methodology and even some exceptions. But what you've given us is not sufficient for us to determine that this is actually a rule of reason. Here, the consul gave us absolutely nothing as to how they were adjudicating visas or administrative processing. All right, Mr. Piston, we have your argument. Okay. Thank you very much, Your Honor. Mr. Ryan. Good morning, Your Honors. Erin Ryan for the government. When reviewing a visa, the State Department has only two options, to issue or refuse it. And after a review of her application and an interview, Ms. Karamova's visa was refused. She had that refusal in January of 2020, three months after she filed her application. What she's seeking now is a re-adjudication, which she is not entitled to under the law, claiming that a decision on that re-adjudication is unreasonably delayed. But she points to nothing that says that the State Department has a duty to give her that re-adjudication. And as the Supreme Court held in Norton, a delay cannot be unreasonable if the action itself is not required. Now, while this is styled as a suit seeking mandamus, Ms. Karamova is actually asking this court to decide whether the consular officer can continue to withhold the visa based on the initial refusal, or if they must make another adjudication. And such a review is barred by the doctrine of consular non-reviewability. If the court does reach the merits of the claim of unreasonable delay and a lack of track factors, the district court's decision should be affirmed. Ms. Karamova's pleading failed to state a plausible claim for unreasonable delay. She has not shown that any of the track factors fall in her favor. None of her arguments trying to undermine the district court's decision carry any weight. I welcome any questions that the court may have. So after denial, when they say denial asterisks, actually we're going to keep it here for administrative processing. We'll get back to you. If there are only two options, or refuse or deny, what is that status? This limbo? Yes. So the visa was refused, but the state department voluntarily may put an applicant into administrative processing. It's an additional voluntary process. The state department can undertake if they believe there might be additional information that could assist the applicant in meeting their burden. So it means denial-ish? No, your honor. It is a final denial. It's not a final denial. If they said, but hang on, we're going to, we think there might be some information that's going to help you and we might change our minds. That's the reason you put an administrative process. I think a way of thinking of it, your honor, is to compare it to district court proceedings. If a district court were to dismiss a plaintiff's case on a motion to dismiss, for example, just because that plaintiff can then appeal or seek re-adjudication or reconsideration, no one would say that the district court's decision is not a final decision or that it doesn't have any effect. Once a rule 59 motion is filed, it's actually not appealable. Your honor, the visa final, but no one would say that the district court decision is an interim decision because it may be later reconsidered or that it doesn't have any effect. If the district court said, well, I'm going to deny your motion for summary judgment, but I'm not sure that I have all the information records. Actually, I'm going to keep it open and accept any information you may have. And then, you know, within due time after I have that information, I'll give you a final result. I'm not sure that we would treat that as a final decision. That is not what happened here. Your honor. She was told you did not meet your burden to prove you were eligible. Your visa is refused. However, you will be given another attempt and typically administrative processing is when there is additional information outside of the applicant's control that might be needed. For example, if there are security concerns, if an investigation needs to take place from another agency, if there are other information, we want people to come to this country for diplomatic reasons. We give them another chance, but it's not required under the law that we give them that second chance. That sounds very reasonable, but it also doesn't sound like what the record reflects. The agency said we reviewed our console records and found that the case has been refused under INA section 221 G. And it is pending the completion of administrative processing in order to verify qualifications for this visa. A decision on this case cannot be made until the consular section finishes its review. These applications are due to adjudicated in accordance with provisions of the INA. We cannot predict when the adjudication of the application will be completed. Much more of that narrative sounds like we're not done. We're thinking about it. We can't make a decision. We're aware of your concerns and we'll let you know when we're done. Anything for the administrative processing. It is open. She is still in administrative processing, but there's nothing under the law, the statutes of regulation that require them to take the second look, no email or form response from the embassy can create a legal duty where there is none already in the statutes or the law. And that just sounds like it's a big wink when, when they say you will refuse or deny, or you will, you will grant or deny. You have two options. That's how you started and you go deny, but we don't really mean it yet. We don't know if we really mean it. It sounds like you're creating a third option. If there are three options on the table, then we don't know yet actually, which one is her final answer. The final answer is that her visa was refused. Why are you still looking? Because we are giving her a second chance to attempt to meet her. Does she get an answer on second chance? Second is second chance treated like a new application. Then you get new information. There's nothing mandatory that says that this administrative processing or At the end of the day, do you end up refusing or denying the second look? It is the state department's practice. Yes. To re-adjudicate once the administrative processing is complete. Then it sounds like it's either you are treating this decision as sort of a, a renewed application, getting new information, at which point you have to refuse or deny. And their arguments about timing all remain exactly the same. Or you didn't, this is some sort of fake process here and you really meant it the first time when you said deny, either you'd meant deny or you didn't mean it. And it's very confusing to me. What this administrative processing is. If you didn't mean it, that seems very relevant to this case. If you didn't mean it, that seems very relevant to your side of the case. Yes. The refusal in your terms, the state department did mean it. It is a refusal. She doesn't have a visa. She can't come to this country. However, that's how she was before she even applied. She couldn't come to the country. She didn't have a visa. That doesn't to say that she can't come to this country because she doesn't have a visa. Doesn't mean anything. If in fact you are still in the process of deciding whether she will get a visa. The state department is looking at whether there is additional information that may assist her. So you didn't have full information when you made that first decision. No, Your Honor. I don't think that's the proper way to look at it. It is the applicant's burden to prove her eligibility. She did not do that. Her visa was refused. However, voluntarily the state department has said we're going to give you another chance to meet your burden. It's not something they're required to do. There's no statute that says there's a specific timeline that it has to happen in. And every case that's in administrative processing is very different, fact specific, and requires different resources to complete. This is a 12B6 motion that you brought. Yes, Your Honor. Which means we can only look at the face of the complaint. And it sounds like what this administrative processing is, what it entails, what it means internally within the state department is quite unknown. Hugely relevant to the answer in this case, but it's simply something we don't have any law or facts on on the face of this complaint. So why isn't, if you want the chance to create a record as to what administrative processing is legally and factually, why isn't the right answer here that 12B6 was, we can't uphold a 12B6 grant based on something that's not on the face of the complaint and is not something that I even see in regulation or statute as existing. So we can't take judicial notice of anything. Why isn't the right answer then to remand and say, develop your record on this and then let the district court figure out what's going on? Because it just seems to be two different stories here. Well, I think there's a few things there, Your Honor. If we're looking at the complaint, it is devoid of any facts that discussing administrative processing. There's no claim that the state department is not adjudicating applicants that are in administrative processing. So there's no claim there. There's definitely a claim there. She filed in 2019, and she has as yet to have a final answer. And I know you say we told you no, but we're still looking and we're keeping it open, and we're going to make another decision after we're done administrative processing. So I am hypothesizing, at least for this question, that that's not a final answer that she's received. Those allegations are there. I filed. I don't have a final answer. And we understand that, Your Honor. We disagree. We think this is a final answer. Because you said in your own words it's not because another answer is coming, correct? It is the state department's practice to re-adjudicate. And you said, and that's what you've said to her, she's in administrative processing, and I thought you told me, and if I misunderstood, please correct me, that there will be a final answer when you're done with this administrative processing. That is the state department's practice. Okay. So there will be a second answer. We can't say that for sure in her case. We don't know why she's in administrative processing. Not every case that goes through administrative processing gets a second re-adjudication. But it is the state department's practice, whenever possible, that they do re-adjudicate based on that fact-specific part. Re-adjudication could still be, never mind, we didn't find anything helpful to you. We only found things hurtful. But she would be notified at the end of the administrative processing. I assume that's your practice. Yes, Your Honor. And that happens whether it's up, down, or no change. I think it's also important to note that this idea – Of course, nowhere in the record. I'm sorry? That's nowhere in the record, this whole administrative processing. I don't know how they're supposed to know about it. She was told at her interview that her visa was refused, but she was being placed in administrative processing. No one understands what that means. I'm still not sure I understand what it means. There's no record here. And if you can tell me what I can take judicial notice of to understand what this processing entails, let me know. Yes, Your Honor. On the State Department's website, they do detail what administrative processing is, what it involves, and what their process is. I'm happy to provide that specific link to the court if that's necessary, but it is on the State Department's website. Does it explain on there how that implicates the status of the initial decision? It doesn't because the initial decision is a decision. That is the refusal. Her visa has been refused. The State Department could have said, you're refused. Thank you. Goodbye. Does it say that we will give you an answer when we're done with administrative processing? It says they may. They may give another answer because there may be some new information that shows they are eligible, but there could be information that reaffirms the refusal. Is administrative processing distinct from when you ask the applicant to provide additional information, or is that part of administrative processing? That is a type of administrative processing, Your Honor. Okay. So is she supposed to know somehow? Is there something we can take judicial notice of that lets her know whether you want information from her or you want information from other entities or both? If there was additional information required, she would have been informed at the interview, but the reasons behind the denial are clearly barred under constant non-reviewability. She wouldn't be entitled to know the specific reasons. No, I'm sorry. What you're doing the administrative processing for, not for the decision, but what it is that she's being administratively processed for, getting information from somewhere else or from her or from both. That's not information we have on the record, nor should it be, under constant non-reviewability. The State Department needs to be able to. That's not a decision. That's just what kind of administrative processing is she in. That's not a decision by the consul on her visa application. It's just a categorization. It's no more unreviewable than the fact that you're talking to us about administrative processing. We would have to make a ruling based on that. I understand, Your Honor. The Second Circuit has expanded constant non-reviewability to involve the entire process of a visa review, and that would include the reason for the administrative processing because it would necessarily indicate what was missing from the application or what steps the State Department was currently taking, which the doctrine protects to allow the State Department to do the work that they need to do, and safely and securely. In this case, we have the email exchange where Karamova said, you asked for more, I gave you everything you asked for, and we don't know whether there's anything else. The government hasn't said, oh, we need more from you, or that's fine, everything you need, everything we need from you has been provided. Correct, Your Honor. All that's in the record is that email. And she's not entitled to anything more than that. That's correct. As a non-resident, non-citizen, she's not entitled to any more information. Now, if we were to accept the government's view here, it seems like that would invite any government that is chronically delayed in its action to adopt this kind of a process, to say denied, but of course we'll still look at this, and if it occurs to us that maybe there is something here, we'll let you know. And why isn't that deeply problematic? I think it's the way to think about it, Your Honor, is not that they're holding it in abeyance if something occurs to them. She did not meet her burden. They told her that. And they could just send her on her way with that refusal. But the State Department wants to encourage people to come here. We want to assist people to meet their burdens. So we're giving her this second bite at the apple, so to speak. And the State Department is assisting her. Perhaps there's information with other agencies. Perhaps there's other information out there that the State Department can gather on her behalf that might assist her in meeting her burden on the re-adjudication. But none of that is required. There's nothing that says the State Department must give these applicants a second chance to prove their burden. Can I ask you one other quick question? You had referred here to a status called withholding, which is not one of your grant or deny options. And I know that phrase withholding shows up in our Bontai case and our Salvador case. What does withholding mean? Withholding is a refusal. The visa has been kept. Grant, refuse, withholding. It's treated as a third category. Not under the regulations. Withholding means, whatever the phrase is there, that means actually denied. It means refused. Refused. You don't do deny, you just do refuse. Under the State Department regulations, yes, they use issue or refuse. Issue, refuse, or discontinue granting. Yes, or revoke, I think is the associated phrase with that. So discontinue granting doesn't mean discontinue the process toward a potential grant. It means revoke. That's my understanding, Your Honor, yes. Okay. The district court said that the government uses a first-in, first-out rule of reason. I don't see that anywhere in the record. And I take it you don't either. On the track factors for the first-in, first-out rule. Assuming that there's jurisdiction and we're looking at whether the government applies any rule of reason to processing visa applications under the INA. So the government, first of all, is entitled to the presumption of regularity. And the interview scheduling is done on a first-in, first-out basis. Is there anything in the record to show that? I think the timing of her application would show that. She applied in October. She had an interview by January. So it was only three months between application and interview and refusal. I mean, it's not inconsistent with an inference that it's first-in, first-out, but there's nothing. There's no affidavit saying we do the interviews on first-in, first-out. We really don't have anything. I mean, it was on a motion to dismiss, to be sure. Yes, Your Honor, but it is Ms. Karamova's burden to show that these track factors fall in her favor and that there is no rule of reason being applied. And here the allegations in the complaint are very conclusory, similar to the DaCosta case where this court found that conclusory statements that they're not applying a rule of reason is not sufficient to support that that track factor. There were declarations. I mean, there's, you know, the government often will come in because there are jurisdictional implications. And so even though it's, you know, Rule 12 motion dismissed, it could be Rule 12B1. And it's just striking that in this case there's nothing from the government saying, hey, this is how we do it. You know, we have a rule. We have a process. We're following the process. Nothing like that. Yes, Your Honor, there is nothing like that in the record. But I think looking at that timeline indicates that. And I also think the complaint claiming that the three to four year delay shows no first in first out ignores the undisputed fact that she had a decision on her visa three months after the application. And now we're in administrative processing, which is different than that initial adjudication where that first in first out would be applied. Your website says. This administrative processing will be done in accordance with department procedures. Where are those procedures? Where can I see those? I'm not sure, Your Honor. I'm happy to file a supplemental if Your Honor would like written procedures somewhere. I believe they would be probably in the State Department regulations or internal procedures. And then it says it would be helpful if you would submit that. Yes. And it also says when administrative processing is required. When is it required? It depends on the each case. The consulate officer. Where's the standard for deciding whether it's required or not? So on their website, it says an officer may determine that additional information from sources other than the applicant may help establish. And that is when it would warrant a further administrative process. It says when administrative processing is required. The consular officer will inform the applicant at the end of the interview. So what I would like to know is when is it required? And where can I take where is something that I can take judicial notice of to understand that meaning of when it's required? I think I mean, I'm saying it's voluntary discretionary, but you're the website you refer me to says when it's required. I think that means when the officer decides that it is like it's warranted. That's what you're telling me. But I can't take judicial notice of that with all respect to your effort to be helpful here. If something is if your website says it may sometimes be required. Don't we need to know what that means? Yes. I only have the information on the website. That's how I read that. That it is when they have decided that it's warranted. And perhaps it's just a different word choice when they say it's required. There's a very different thing between warranted or in our discretion and required. And since you mentioned procedures before, it will be helpful if whatever if there's anything State Department has that says when it's required, it will be very helpful to know. In your view, does a consular official have any non-discretionary obligation to adjudicate an immigrant visa application in the first instance at all? Respectfully, that's not a question that's before this court because her visa application was reviewed and rejected. Well, if we were, it is before this court, because as opposing counsel pointed out, a lot of the districts and the Ninth Circuit have said that the refusal is not actually action. And if we were to agree with that, then we would have to figure out whether that action or whether there is a requirement, excuse me, of a non-discretionary obligation to adjudicate an immigrant visa application. I think whether or not there is a duty to adjudicate in the first instance, I don't know that it's in dispute that they fulfilled that duty here. If we assume it is without deciding. You just gave me the same answer that I said I wasn't assuming for purposes of the question that I disagree with you. If there is an application pending, is there any duty on a consular officer non-discretionary duty to adjudicate it? If there were one pending. In the first instance for a first adjudication? At all. First adjudication or after denial. After denial, there is definitely no. So in the first instance. In the first instance, you are correct that different courts have come down different ways on this. There is case law saying that there is no duty to adjudicate in the first place. But again, that's not something the parties have really grappled with here because she did get an initial adjudication. Well, the plaintiff says there's a duty under the Administrative Procedure Act, 555B. And what's your position on that? 555B is very open-ended language. And there's no reference to visas. There's no specific unequivocal command ordering a precise definite act that the Norton case requires from the Supreme Court. So, I mean, when we're talking about. There's no reference either to tribal recognition. And we held in Mashpee that 555B was created a non-discretionary obligation to adjudicate a tribal recognition petition. Yes, Your Honor. As you pointed out to my opposing counsel, Norton came after Mashpee. I also think the facts of Mashpee distinguish it from here. I think the Department of Interior reviewing those types of applications is very different than the State Department reviewing a visa application. Where there are a number of statutes and case law that says how a visa is adjudicated. And what the State Department does is in the discretion of the State Department and the legislative and executive branch. And the judiciary is not going to climb in and second-guess what happens there. No, but not whether. Not whether it does so. I mean, you yourself said that either deny or grant.  Is it your position that the statutory requirement under 1202B providing that all immigrant visa applications shall be reviewed and adjudicated? That they don't actually have to? I'm not going so far as to say that. But courts have said that 1202B is not a source of a clear non-discretionary duty. The government seems to have read it differently in the regulation that I thought you were citing. Which is requiring a consular officer to issue the visa or refuse the visa or discontinue granting the visa. It's requiring action, no? Yes, Your Honor. But I don't think that goes so far as to say that there is a non-discretionary clear duty. And the question of whether 1202B requires the adjudication in the first place is actually an open question pending before this court in the good luck case. Thank you. Just one quick question. You referenced that you do this administrative processing for diplomatic reasons. Yes, Your Honor. Where could I take judicial notice that administrative processing is done for diplomatic reasons? Perhaps diplomatic is not the right term. It is the State Department's policy. We don't want to. Where is this policy that I could take judicial notice of? I don't know that it's an official policy, Your Honor. It is the State Department's practice that we want people to come to this country. We want to give them that chance. Is there anything we can take judicial notice of or is this just something factually that needs to be developed? I'm not sure, Your Honor. I'm happy to check and get back to the court on that. All right. Thank you, Counsel. Thank you very much for your time. Does Mr. Piston have any time? I know I overran my prior time. Do I still get two minutes? Why don't you take two minutes? Okay. First of all, Your Honor, the government made reference to a presumption of regularity as an explanation of why she thought that the consul must be doing things on a first in, first out. But the presumption of regularity presumes that government officials will comply with the law. There's no law requiring the consul to process cases on a first in, first out basis. Rather, that comes from the rule of reason in the track case. So the presumption of regularity doesn't really apply here. Second of all, I'd like to point out the fact that even though she did say that the consul processed case on a first in, first out, there's absolutely nothing in the plaintiff's complaint, certainly, that says that. And therefore, this is not something that this court can consider unless, of course, they take it under judicial notice. And there's nothing to judicially notice here, except this argument and allegation exists nowhere except in the argument of opposing counsel. Also, I'd like to... What do we do with the fact that your complaint alleges that she filed in 2019 and no action was taken on her application, when, in fact, she'd had an interview and a decision called refused, but that didn't appear in the complaint? What are we supposed to do about that? Your Honor, I don't have the exact language of the complaint in front of me. If I use those words... It doesn't say that she had an interview and that she has a decision that says it's denied, but we're doing some administrative processing. That's not in there. What I'm sure we did say was that her visa was neither grant issued or finally refused, and that's her position in this matter. And whether she was interviewed or not really is neither here nor there. The complaint was all about no action. It's a very different question when there has been action and then there's another layer of action from no action. Your Honor, if I might be allowed to file a supplementary brief on that matter, I'm quite certain that we did take the position that the visa had not been refused or issued. We'll let you know about that. Okay, thank you. Thank you very much.
judges: Henderson, Millett, Pillard